DAPHNE L. BURTON (Bar No. 226378)
dburton@burtoniplaw.com
BURTON IP LAW GROUP
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Tel: (310) 867-2754
Fax: (888) 972-1879

Attorneys for Plaintiffs
Thu Hoang and Thanh Hoang

# UNITED STATES DISTRICT COURT
## CENTRAL District of California

| | |
|---|---|
| THU HOANG (AKA DAMIEN KING) AND THANH HOANG,<br><br>        Plaintiffs,<br><br>v.<br><br>KIEU HOANG, an individual, KIEU HOANG PRODUCTIONS, LLC, a California limited liability company, HUMMINGBIRD NEST, a California limited liability company,<br><br>and<br><br>DOES 1-25.<br><br>        Defendants. | CASE NO.<br><br>**ORIGINAL COMPLAINT**<br><br>**Count I – Breach of Contract**<br>**Count II – Unjust Enrichment**<br>**Count III – Copyright Infringement in Violation of 17 USC §501 et seq.**<br>**Count IV – Fraud and Misrepresentation**<br>**Count V – Breach of Implied Covenant of Good Faith and Fair Dealing**<br>**Count VI – Conversion**<br>**Count VII – Violation of Cal. Civ. Code 1719**<br>**Count VIII – Unfair Competition**<br>**Count IX – Declaratory Judgment of Copyright Non-Ownership by Defendants**<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiffs Thu Hoang and Thanh Hoang ("Plaintiffs") respectfully submit this Original Complaint against Defendants Kieu Hoang and Kieu Hoang Productions, LLC, and Hummingbird Nest, LLC ("Defendants") and avers as follows:

## PARTIES

1.    Plaintiff Thu Hoang (aka "Damien King") is an individual, having a residence at 1049 E. Ocean Blvd.  #10, Long Beach, Los Angeles County, California 90802. Plaintiff Damien King is one of four children of Tho Thi Hoang, whose musical compositions are the subject matter of the present action. Tho Thi Hoang passed without a will, and his four children inherited his estate via intestate succession.

2.    Plaintiff Thanh ("Ted") Hoang is an individual, having a residence at 2311 Stephens Grant Dr., Sugar Land, For Bend County, Texas 77479. Plaintiff Thanh Hoang is another of the four children of Tho Thi Hoang, whose musical compositions are the subject matter of the present action. Tho Thi Hoang passed without a will, and his four children, including Ted Hoang, inherited his estate via intestate succession.

3.    Defendant Kieu Hoang is an individual, residing at 2940 Kuehner Dr., Simi Valley, Ventura County, California 93063. Defendant Kieu Hoang entered into a contract with Plaintiffs in this judicial district.

4.    Defendant Kieu Hoang Productions, LLC is a California limited liability company, having a principal place of business at 3615 Old Conejo Rd., Thousand Oaks, California 91320.  Defendant Kieu Hoang Productions, LLC promotes, hosts and/or sponsors events in this judicial district using the music of Tho Thi Hoang. Defendant Kieu Hoang Productions, LLC also issued checks to Plaintiff Damien King for which insufficient funds were available in this judicial district.

Original Complaint
*King v. Hoang et al.*

5.     Defendant Hummingbird Nest, LLC (aka "Hummingbird Nest Ranch") is a California limited liability company with a principal place of business in 2940 Kuehner Dr., Simi Valley, Ventura County, California 93063. Defendant Hummingbird Nest promotes, hosts and/or sponsors events in this judicial district using the music of Tho Thi Hoang.

6.     The true names and capacities of the Defendants named herein as DOES 1 through 25, inclusive, are unknown to Plaintiffs at this time. Therefore, Plaintiffs sue said Defendants by such fictitious names. Plaintiff will amend this complaint to allege these Defendants' true names and capacities when they have been ascertained.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331 because this action arises under the copyright laws of the United States, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to at least 28 USCS § 1367.

8.     This Court has personal jurisdiction over Kieu Hoang, an individual, because Defendant Kieu Hoang resides in this judicial district at 2940 Kuehner Dr., Simi Valley, Ventura County, California 93063.

9.     This Court has personal jurisdiction over Kieu Hoang, because he is an owner, officer, member, agent and/or employee of one or more companies located in this judicial district. He engages in business in each of these companies in this judicial district.

Original Complaint
*King v. Hoang et al.*

10.   This Court also has personal jurisdiction over Kieu Hoang because Kieu Hoang's acts of copyright infringement, including hosting, promoting, sponsoring and conducting shows with infringing material, were performed in this judicial district.

11.   Upon information and belief, Defendant Kieu Hoang has knowingly and actively infringed, contributed to infringement and/or has induced others to commit such acts of infringement in this judicial district.

12.   This Court has personal jurisdiction over Kieu Hoang Productions, LLC because Defendant Kieu Hoang Productions, LLC has a principal place of business in this judicial district at 3615 Old Conejo Road, Thousand Oaks, CA 91320. Kieu Hoang ran/runs Kieu Hoang Productions, LLC. He is/was the manager and Registered Agent of Kieu Hoang Productions, LLC.

13.   This Court also has personal jurisdiction over Kieu Hoang Productions, LLC because Kieu Hoang Productions, LLC's acts of copyright infringement, including promoting and conducting shows with infringing material, were performed in this judicial district.

14.   Upon information and belief, Defendant Kieu Hoang Productions, LLC has knowingly and actively infringed, contributed to infringement and/or has induced others to commit such acts of infringement in this judicial district.

15.   This Court has personal jurisdiction over Hummingbird Nest because Defendant Hummingbird Nest is an event venue with land totaling more than 120 acres in this district. Defendant Hummingbird Nest is located at 2940 Kuehner Dr., Simi Valley, Ventura County, California 93063. It has hosted events where the infringing musical works were used.  Defendant Hummingbird Nest had both the right and ability to supervise the events and a direct financial benefit from the

infringement. Kieu Hoang runs Hummingbird Nest, LLC. Kieu Hoang is the Chairman, Chief Executive Officer and Registered Agent of Hummingbird Nest, LLC.

16.   Venue is proper in this Court pursuant to 28 USCS § 1391 and 28 USCS § 1400.

17.   Venue is proper against Kieu Hoang in this judicial district because he resides in this judicial district.

18.   Venue is also proper against Kieu Hoang Productions, LLC and Hummingbird Nest in this judicial district because Kieu Hoang Productions, LLC and Hummingbird Nest each have a principal place of business in this judicial district.

19.   Venue is still further proper against both Kieu Hoang, Kieu Hoang Productions, LLC and Hummingbird Nest in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district.

### INTRADISTRICT ASSIGNMENT

20.     Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a districtwide basis.

### STATEMENT OF FACTS

21.   The musical works of Tho Thi Hoang are at the core of this litigation. Thơ Thi Hoang was a popular and revered Vietnamese musical artist who composed and performed musical creations. Tho Thi Hoang enjoyed nationwide

popularity in Vietnam in the 1950s and 1960s. Thereafter, his music and dance troops were brought to Europe and Asia in the 1960s and 1970s. After the fall of Saigon in 1975, Tho Thi Hoang was part of the musical diaspora which emigrated from Vietnam to Southern California in the mid-1970s. Tho Thi Hoang brought his family, including his wife —who was a top Vietnamese singer—and four children with him to Southern California. Tho Thi Hoang's four children were Thoa Le (nee Hoang), Thi Hoang, Thu Hoang (Damien King) and Thanh (Ted) Hoang.

22.   Additionally, Tho Thi Hoang took in his nephew Kieu Hoang to care for his nephew when his nephew had no other immediate family. Tho Thi Hoang arranged for Kieu Hoang to obtain an education, after which Kieu Hoang became a highly successful billionaire businessman.

23.   In or around 2001, Thơ Thi Hoang passed away without a will. As part of his estate, Tho Thi Hoang left a musical collection that represented a valuable part of Vietnamese culture. By intestate succession, that musical collection was owned by his four children, two of whom are named Plaintiffs herein. Kieu Hoang did not inherit any part of this musical collection, despite misrepresentations that may have been made to the Copyright Office that Kieu Hoang had inherited the musical works of Tho Thi Hoang. This valuable collection of music by such a revered and culturally significant artist was Plaintiffs' father's legacy.

24.   On or about June 21, 2018, Plaintiffs and defendant Kieu Hoang executed a Copyright Assignment Agreement regarding copyrights to Tho Thi Hoang's music. (Exhibit A)

Original Complaint
*King v. Hoang et al.*

25.   The Copyright Assignment Agreement required defendant Kieu Hoang to pay $1,000,000 to each of Tho Thi Hoang's four children.

26.   The Copyright Assignment Agreement required defendant Kieu Hoang to pay $1,000,000 to plaintiff Thu Hoang, also known as Damien King and $1,000,000 to plaintiff Thanh Hoang, also known as Ted Hoang.

27.   Plaintiffs performed their obligations under the Copyright Assignment Agreement by assigning rights to the copyrights to Tho Thi Hoang's music to defendant Kieu Hoang.

28.   The Copyright Assignment Agreement contained no warranty by Plaintiffs that there were no existing licenses to Tho Thi Hoang's music, which Defendant Kieu Hoang later attempted to use as an excuse to discontinue payments under the Agreement.

29.   Counsel selected by Defendant Kieu Hoang drafted the Copyright Assignment Agreement.

30.   Plaintiffs understood that the counsel selected by Kieu Hoang was there to help all parties achieve their goal of assigning the registered and unregistered copyrights to Defendant Kieu Hoang. (A list of more than 130 copyrights that are the subject of this lawsuit is attached as Exhibit B.)

31.   Plaintiffs did not select counsel of their own because they understood Kieu Hoang's selection of counsel to be working to secure the copyright assignment for the four children of Tho Thi Hoang, two of whom are named Plaintiffs herein, as well as Defendant Kieu Hoang.

7

Original Complaint
*King v. Hoang et al.*

32.   Alternatively and/or in addition thereto, the counsel selected by Kieu Hoang was working solely for Kieu Hoang as he had no agreement with Plaintiffs, in which case the Copyright Assignment Agreement would be construed against the drafter.

33.   As payment under the Agreement, Defendant Kieu Hoang issued at least eleven checks for which insufficient funds were available to plaintiff Damien King, totaling $400,000.

34.   The checks for which insufficient funds were available were issued from the bank account for Kieu Hoang Productions, LLC.

35.   The check numbers, dates and amounts for the checks for which $400,000 in insufficient funds were available are as follows:

a.     Check Number: 1026; Date: 6/30/2018; Amount: $12,500.

b.    Check Number 1033; Date: 7/16/2018; Amount: $37,500.

c.    Check Number: 1055; Date: 8/13/2018; Amount: $50,000.

d.    Check Number: 1100; Date: 10/10/2018; Amount: $50,000.

e.    Check Number: 1108; Date: 11/15/2018; Amount: $50,000.

f.     Check Number: 1175; Date: 5/16/2019; Amount: $31,250.

g.    Check Number: 1319; Date: 6/5/2019; Amount: $31,250.

h.    Check Number: 1207; Date: 6/17/2019; Amount: $31,250.

i.     Check Number: 1218; Date: 7/8/2019; Amount: $25,000.

j.     Check Number: 1351; Date: 10/22/2019; Amount: $31,250.

k.     Check Number: 1393; Date: 2/4/2022; Amount: $25,000.

l.    Check Number: 1226; Date:2/21/2022; Amount: $25,000.

36.   Plaintiffs Damien King and Ted Hoang notified Defendant Kieu Hoang that he was not making payments in accordance with the terms of the

Agreement and that Kieu Hoang should fulfill his obligations under the Agreement.

37.   Plaintiff Damien King notified Defendant Kieu Hoang that Kieu Hoang and Kieu Hoang Productions, LLC had written several checks for which insufficient funds were available. Defendant Kieu Hoang on several occasions missed payments and/or asked Plaintiffs to not cash checks that were already written and issued to plaintiffs due to insufficient funds. For example, on December 16, 2019, before the Covid 19 pandemic, Kieu Hoang asked Plaintiffs to refrain from cashing checks that had already been written. Defendant Kieu Hoang, on several other occasions including on February 24, 2020, November 23, 2020 and other occasions indicated that he was short on funds, this time due to the Covid-19 pandemic. He told Plaintiffs that he would make the payments late and he would take care of them. Plaintiffs were understanding and patient since Kieu Hoang was family.

38.   Although Plaintiff Damien King sent Kieu Hoang messages, indicating penalties were associated with the previously-issued insufficient funds checks, Plaintiff Damien King never even suggested that Kieu Hoang had to enter into a new monthly agreement to pay $25,000 monthly. Despite this, on or about February 4, 2022, Defendant Kieu Hoang of his own free volition and accord promised to make monthly installment payments of $25,000 to plaintiffs in order to fulfill his obligations under the Agreement.

39.   In connection with his renewed promise in recognition and renewal of the original Agreement to make payments, Defendant Kieu Hoang directed Joy Li of Defendant Kieu Hoang Productions, LLC to make monthly payments in the amount of $25,000.

Original Complaint
*King v. Hoang et al.*

40.   Days later, on or about February 7, 2022, Defendant Kieu Hoang messaged Damien King, indicating as follows regarding the check dated February 4, 2022: "You should not cash this Cheque as kieu hoang production account has been closed by the bank and kieu hoang production has been reported to Secretary of State that it has closed and it has returned copyright of hoang thi tho to four of you…" Thus, Kieu Hoang stated that he had returned the copyrights to the four siblings. (Kieu Hoang continued to fail to make payments. Moreover, as it later became apparent, Kieu Hoang nonetheless continued unauthorized uses of the copyrighted music for himself and his businesses.)

41.   Defendant Kieu Hoang sent two checks in the amount of $25,000 to plaintiff Damien King via checks from Kieu Hoang Productions LLC's account dated February 4, 2022 and February 21, 2022.

42.   Damien King was able to cash the check dated February 21, 2022. However, the February 4, 2022 check was returned due to insufficient funds, thus resulting in a total of $400,000 in checks that had been written to Damien King, but insufficient funds were available for these checks.

43.   Defendants Kieu Hoang and Kieu Hoang Productions, LLC ceased making payments to plaintiff Damien King after the February 2022 payments.

44.   Defendants Kieu Hoang and Kieu Hoang Productions, LLC had earlier ceased making payments to plaintiff Ted Hoang and the other siblings near the end of 2021. In connection with earlier indicating he would cease to make any further payments under the Agreement, Kieu Hoang indicated that he would return the copyrights to the four siblings. (Exhibit C). However, later denied that he returned the copyrights while he simultaneously unilaterally refused to pay,

Original Complaint
*King v. Hoang et al.*

without receiving any agreement from the four siblings to either relieve Kieu Hoang of any payment obligations. Nor did the siblings agree for Kieu Hoang to continue using the copyrights.

45.   As of the date of the filing of this action, defendant Kieu Hoang owes plaintiff Ted Hoang $600,000 under the Copyright Assignment Agreement.

46.   Plaintiff Damien King was only able to cash $75,000 worth of checks under the Agreement. As of the date of the filing of this action, defendant Kieu Hoang owed plaintiff Damien King $925,000 under the Copyright Assignment Agreement. (The eleven hot checks totaling $400,000 were never paid.)

47.   The total amount owed by defendant Kieu Hoang to plaintiffs under the Copyright Assignment Agreement is at least $1,525,000.

48.   On multiple occasions, Plaintiffs inquired into the reasons that their payments had not been made.

49.   Defendant Kieu Hoang has claimed that payment was not made because the Copyright Assignment Agreement was unenforceable due to alleged warranty breaches regarding third-party licenses to Tho Thi Hoang's music.

50.    Kieu Hoang stated that the agreement was unenforceable because third parties had licensed Tho Thi Hoang's songs; however, he never produced proof of same.

51.   Again, on or about April 1, 2024, and in response to an email dated March 18, 2024, Kieu Hoang's representative stated that Kieu Hoang was unable to enforce the copyrights, so he wanted to return the copyrights and cancel remaining payments under the Agreement.

52.  Plaintiffs requested proof that Kieu Hoang could not enforce the agreements. Again, such proof was never provided even though counsel Rob Blackmon had earlier indicated on or about February 21, 2018, as follows: "You are all equal partners and clients in the copyright action. You should have received this power of attorney from Richard that states this. You should not be excluded from any of the information. Please feel free to ask me for copies of any documents."

53.  In *Kieu Hoang v. Lang Van*, Case No. SA CV 19-0256-DOC, the court dismissed defendant Kieu Hoang's claims without prejudice due to his failure to make proper allegations in his complaint. Kieu Hoang never properly addressed the allegations, and he made no further filings in an attempt to continue his case. Yet Kieu Hoang blamed this dismissal on some alleged breach of warranty by Plaintiffs. This was a mistruth as there was no breach of warranty and nor did the court's documents mention such an alleged breach of warranty due to existing licenses. Plaintiffs were unaware of what had occurred in the *Lang Van* lawsuit at the time, despite being told that they were able to obtain copies of any documents.

54.  On its face, the court's order in *Kieu Hoang v. Lang Van*, does not indicate that the case was dismissed due to any existing licenses.

55.  Defendant Kieu Hoang, Kieu Hoang Productions, LLC, and Hummingbird Nest have used or benefited from the use of Tho Thi Hoang's music without paying the full amount owed under the Copyright Assignment Agreement. Since Kieu Hoang purported to give the copyrights back, these uses were unauthorized.

Original Complaint
*King v. Hoang et al.*

56.   On or about November 5, 2024 Defendants sponsored, promoted and/or advertised a bridal expo event at Hummingbird Nest that used the music of Tho Thi Hoang. Defendant indicated that the grand opening of "Paradise of Love" would occur on October 27, 2024.

57.   On or about May 10 and 11, 2025, Defendants engaged in unauthorized uses of Tho Thi Hoang's music by promoting, sponsoring or hosting an event for Kieu Hoang's company, RAAS Nutritionals. In this connection, two video clips were posted on Kieu Hoang's official Facebook page featuring the music of Tho Thi Hoang to promote products for one or more of Kieu Hoang's companies.

58.   Notably, in June 2025, including on or about June 24, 2025, defendants Kieu Hoang and Kieu Hoang Productions, LLC promoted events featuring Tho Thi Hoang's songs at Defendant Hummingbird Nest.

59.   Thereafter, on or about November 16, 2021 and thereafter Defendant Kieu Hoang made false statements to plaintiffs about returning the copyrights to Tho Thi Hoang's music.

60.   Defendant Kieu Hoang continued to use the copyrights to Tho Thi Hoang's music after Defendant Kieu Hoang made false statements about returning them.

61.   On or about July 6, 2025, Defendants used the copyrighted music of Tho Thi Hoang, which copyrights Kieu Hoang had previously indicated that they returned to Plaintiffs. On information and Kieu Hoang produced a tenth show known as "Ta Tinh 10th" and held a press conference on July 6, 2025, at Diamond Seafood Palace Restaurant to promote his various businesses.

62.    The copyrights at issue include at least 130 registrations and numerous songs composed by Tho Thi Hoang.

63.    On January 21, 2026, plaintiffs' attorneys sent a demand letter to defendant Kieu Hoang's counsel demanding payment under the contract and otherwise by January 27, 2026.

64.    Defendant Kieu Hoang has not paid the amount demanded.

### CLAIMS FOR RELIEF
### Count I - Breach of Contract
### (Against defendant Kieu Hoang and Kieu Hoang Productions, LLC)

65.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66.    A valid contract existed between plaintiffs and defendant Kieu Hoang. If a valid contract did not exist which gave Kieu Hoang rights to the copyrights, then Kieu Hoang and the remaining defendants are liable for copyright infringement as they would not have been authorized to use the copyrights.

67.    On June 21, 2018, plaintiffs and defendant Kieu Hoang executed a Copyright Assignment Agreement regarding copyrights to Tho Thi Hoang's music. The Agreement was signed by the four siblings (including the two named plaintiffs) and Kieu Hoang.

68.    The Copyright Assignment Agreement required defendant Kieu Hoang to pay $1,000,000 to plaintiff Thu Hoang, also known as Damien King, and $1,000,000 to plaintiff Thanh Hoang, also known as Ted Hoang.

69.    Plaintiffs performed their obligations under the Agreement.

Original Complaint
*King v. Hoang et al.*

70.   Plaintiffs assigned the copyrights to Tho Thi Hoang's music to defendant Kieu Hoang as required by the Copyright Assignment Agreement.

71.   Defendants breached the contract.

72.   Although Defendants wrote checks under the Agreement, eventually Plaintiff Damien King was only able to collect $75,000 under the Agreement. Accordingly, Defendant Kieu Hoang and/or Kieu Hoang Productions, LLC failed to pay the full $1,000,000 owed to plaintiff Damien King.

73.   Defendant Kieu Hoang failed to pay the full $1,000,000 owed to plaintiff Ted Hoang.

74.   Defendant Kieu Hoang issued at least eleven checks for which insufficient funds were available at the time the checks were presented to the banks, totaling $400,000 to plaintiff Damien King.

75.   In a message dated on or about January 7, 2020, Defendant Kieu Hoang's representative Christiane Duque stated "Pls don't cash the old check…we can just replace." Thus, Defendant via his representative indicated an intent to live up to its terms of the Agreement and make payments under the Agreement in the amount of $25,000 monthly.

76.   Due to the concurrent Covid-19 pandemic, many businesses were not doing as well as they usually had.

77.   Accordingly, Plaintiffs Damien King and Ted Hoang granted Defendants grace in paying the amounts due under the Agreement, particularly considering the fact that Plaintiffs and Defendant Kieu Hoang were cousins.

15

Original Complaint
*King v. Hoang et al.*

78.   Plaintiffs' family had raised Defendant Kieu Hoang after his own parents passed away when he was five or six years old. Plaintiffs expected that Defendants would be more financially capable in the future, so they waited for conditions to improve for Defendants.

79.   On or about November 16, 2021, Defendant Kieu Hoang wrote the following: You should not fake [sic] the Cheque to chase At Long Beach bank which just called me I will not pay any more penny So Far each one of you have cashed 400,000  usd total 1,600,000 usd I will return all your father copyright to four of you…" Defendant Kieu Hoang made a misrepresentation because he was fully aware that Damien King had not cashed the checks that had been sent to him because Defendant Kieu Hoang had already discussed this with Plaintiff Damien King. Additionally, Kieu Hoang had caused his representative Christian Duque to contact Damien King to tell him not to cash the checks during various periods, including before and after the covid lockdowns.

80.   Plaintiffs Damien King and Ted Hoang demanded that Kieu Hoang pay the monies due under the Agreement, including the amounts for the insufficient funds checks and amounts for which checks that were due but had never issued.

81.    In a message dated February 4, 2022, Defendant Kieu Hoang agreed to make payments of $25,000 monthly under the Agreement.

82.   Defendant Kieu Hoang made two additional payments of $25,000 to Damien King in February 2022.

Original Complaint
*King v. Hoang et al.*

83.   Shortly after making the two February 2022 payments of $25,000, Defendant Kieu Hoang stated on or about February 7, 2022, that the Tho Thi Hoang copyrights were being returned.

84.   More particularly, on or about February 7, 2022, Defendant Kieu Hoang stated as follows: "You should not cash this Cheque as kieu hoang production account has been closed by the bank and kieu hoang production Has been reported to Secretary of State that it has closed and it has returned copyright of hoang thi tho to four of you…Instead I will send you my personal Cheque but I have to deduct the taxes as I have obligation to do so and I will never let you cash…Rob my legal counsel will send you a letter soon…"

85.   Defendant Kieu Hoang ceased making payments despite promising $25,000 monthly installments. Pursuant to these terms, the amounts would have been paid off within four years.

86.   Plaintiffs sent Defendant Kieu Hoang several communications regarding his late or missed payments.

87.   For example, on or about April 1, 2024, communications between the parties regarding the missed payments, and any other relevant details about the breach.

88.   In response, Defendant Kieu Hoang's counsel indicated that the following warranty was breached by Plaintiffs in the Copyright Assignment Agreement: "Assignors have full and complete right, title and interest in and to the Copyrights and have not sold, granted, conveyed or assigned any of Assignors' right, title or interest in or to the Copyrights to any person, firm or corporation other than Assignee."

Original Complaint
*King v. Hoang et al.*

89. Kieu Hoang's counsel claimed on his behalf that the aforementioned warranty was breached because third parties claimed to have explicit or implicit licenses to Tho Thi Hoang's music.

90. However, under California and U.S. federal law, the existence of a license to a copyright alone does not breach a warranty that the assignors have full and complete right, title, and interest in the copyrights. A license does not necessarily constitute a transfer of ownership of the copyright and nor does it necessarily affect the assignor's ability to convey full title to the copyright. *Lulirama Ltd., Inc. v. Axcess Broadcast Servs.*, 128 F.3d 872, *Maclean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc*., 952 F.2d 769. For example, in , *Maclean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, the court emphasized that a license does not necessarily amount to a transfer of ownership, and the licensor retains the right to enforce the copyright against uses beyond the scope of the license. *Maclean Assocs. v. Wm. M. Mercer-Meidinger-Hansen, Inc*., 952 F.2d 769.

91. Moreover, the clear terms of the Agreement include no warranty that there are no explicit or implicit licenses.

92. Plaintiffs simply did not make the warranty that Defendant Kieu Hoang claimed Plaintiffs made.

93. Kieu Hoang was represented by counsel who drafted the subject Agreement. Plaintiffs were not represented.

94. Since Kieu Hoang's counsel drafted the Agreement on his behalf, Kieu Hoang could have input the terms of the agreement that they so desired. If they did not, there was nothing stopping them from doing so or from proposing desired terms.

95.  In the event that Defendant Keiu Hoang continues to claim, despite no express language pertaining to a warranty of no licenses, that this Agreement includes a warranty that there were no licenses, then the contract is ambiguous in this regard.

96.  In California, ambiguities in a contract, including those related to warranties, are generally construed against the drafter of the contract. This principle is codified in Cal Civ Code § 1654 which provides that in cases of uncertainty not resolved by other rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. Cal. Civ. Code § 1654, *Victoria v. Superior Court*, 40 Cal. 3d 734.

97.  In the context of warranties, ambiguities are also construed against the drafter. For example, in *Inner Shoe Tire Co. v. Tondro*, 83 Cal. App. 689, the court held that ambiguities in warranty language should be resolved against the parties who drafted the terms, particularly when the warranties were not inconsistent and could be interpreted as cumulative. *Inner Shoe Tire Co. v. Tondro*, 83 Cal. App. 689. Similarly, for example, Cal U Com Code § 10215 and Cal U Com Code § 2317 emphasize that warranties, whether express or implied, should be construed as consistent and cumulative unless such a construction is unreasonable, in which case the intention of the parties determines the dominant warranty. Cal U Com Code § 10215, Cal U Com Code § 2317.

98.  The principle of construing ambiguities against the drafter is not merely a "tie-breaker" but is rooted in public policy considerations, particularly in cases where one party has superior bargaining power or control over the contract's language. *Tahoe National Bank v. Phillips*, 4 Cal. 3d 11, *Western Bagel Co., Inc. v. Superior Court*, 66 Cal. App. 5th 649. This approach ensures fairness and protects the reasonable expectations of the non-drafting party, especially in

Original Complaint
*King v. Hoang et al.*

situations involving unequal bargaining positions. *Victoria v. Superior Court*, 40 Cal. 3d 734, *Wheeler v. St. Joseph Hospital*, 63 Cal. App. 3d 345, *Tahoe National Bank v. Phillips*, 4 Cal. 3d 11.

99.  Alternatively, Kieu Hoang's chosen counsel represented both Plaintiffs and Defendant Kieu Hoang since he was purportedly there to help all of them (the four siblings and Kieu Hoang) with the copyrights, and the four siblings signed a power of attorney for Kieu's chosen counsel to handle affairs on their behalf in the Copyright Office.

100. Plaintiffs suffered damages as a result of defendant's breach.

101. As of January 21, 2026, defendant Kieu Hoang owed plaintiff Ted Hoang $600,000.

102. As of January 21, 2026, defendant Kieu Hoang owed plaintiff Damien King $925,000.

103. The total damages suffered by plaintiffs as a result of defendant's breach is at least $1,525,000.

104. WHEREFORE, Plaintiffs pray for relief as set forth herein.

## Count II - Unjust Enrichment

### (Against all defendants)

105. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 104 as if fully set forth herein.

106. Defendants received a benefit. Defendants drew visibility and funds to their event by promoting the music of Tho Thi Hoang, who was a popular and revered Vietnamese musical artist.

20

107. Defendants Kieu Hoang, and Kieu Hoang Productions, LLC, and Hummingbird Nest used Tho Thi Hoang's music to host events. Defendant Kieu Hoang used the music of Tho Thi Hoang to promote Kieu Hoang's various companies on his Facebook page. Kieu Hoang also misrepresented to the Copyright Office that he inherited these works from Tho Thi Hoang.

108. Defendants used the copyrights to promote events, perform, and generate revenue.

109. For example, on or about November 5, 2024 Defendants advertised a bridal expo event at Hummingbird Nest that used the music of Tho Thi Hoang. Defendants indicated that the grand opening of "Paradise of Love" would occur on October 27, 2024.

110. On or about May 10 and 11, 2025, Defendants engaged in unauthorized uses of Tho Thi Hoang's music by promoting, sponsoring or hosting an event for RAAS Nutritionals.

111. Notably, in June 2025, including on or about June 24, 2025, defendants Kieu Hoang and Kieu Hoang Productions, LLC promoted events featuring Tho Thi Hoang's songs at Defendant Hummingbird Nest. On or about July 6, 2025, defendants held an event featuring Tho Thi Hoang's musical works.

112. Through these events, Defendant Kieu Hoang became recognized as a host of Vietnamese cultural events which drew business to him at his production company, event venue and Kieu Hoang's other businesses.

113. Defendants knew of the benefit. Defendants knew they were using the copyrights to Tho Thi Hoang's music. Defendants knew that defendant Kieu Hoang had not paid the full amount owed under the Copyright Assignment

Agreement. Defendants also knew they had issued checks for insufficient funds for which the amounts remained unpaid.

114. Damien King and Ted Hoang had sent Kieu Hoang multiple communications, informing Kieu Hoang of missed payments under the Copyright Assignment Agreement. These communications occurred from at least February 2022 to April 2024.

115. Defendants knew of the unpaid amounts. Kieu Hoang even said he was returning, and had returned, the copyrights.

116. Yet, Defendants continued to use the copyrights. Defendants profited from the use of Tho Thi Hoang's copyrights.

117. Defendants acknowledged communications concerning non-receipt of payment to Damien King and Ted Hoang when they sent replies.

118. Defendants' acknowledgements show defendants' knowledge of the unpaid amounts and their continued use of the copyrights.

119. Defendants accepted or retained the benefit under circumstances that would make it unjust to retain it without payment.

120. Defendants kept all the revenue from their events and did not pay any type of compensation from these events for their use of the copyrights.

121. Additionally, Defendants continued to use the copyrights while defendant Kieu Hoang failed to pay the full amount owed under the Copyright Assignment Agreement.

122. Defendants retained the benefit of using the copyrights without compensating plaintiffs for the full amount owed.

123. It would be unjust for Plaintiffs to not only give up the right to their father's music, but also to not receive compensation for it. This was music created by a parent, which has special meaning to a child.

124. Plaintiffs suffered a loss as a result.

125. Plaintiffs lost the benefit of the full payment owed under the Copyright Assignment Agreement.

126. Plaintiffs suffered damages in the amount of at least the benefit which was bestowed upon them via use of the marks.

127. This benefit could be the value of the copyright as shown in the agreement, i.e., $600,000 to plaintiff Ted Hoang and $925,000 to plaintiff Damien King, totaling at least $1,525,000.

128. WHEREFORE, Plaintiffs pray for relief as set forth herein.

## Count III - Direct, Contributory, And Vicarious Copyright Infringement in Violation of 17 USCS § 501

### (Against all defendants)

129. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 130 as if fully set forth herein.

130. If the Copyright Assignment Agreement is not valid or enforceable as Defendants claim, then Defendants are liable for copyright infringement.

Plaintiffs own valid copyrights in the works. Plaintiffs own copyrights to Tho Thi Hoang's music, consisting of at least 86 songs. Kieu Hoang represented that there were 350 copyrights for the works.

131. Each of Defendants is directly liable for copyright infringement. Each of defendants engaged in conduct that violated one or more of the exclusive rights granted to copyright holders under 17 USCS § 106 such as reproduction, distribution, or public display of the copyrighted work, without authorization when they promoted, hosted, advertised or had performed on their property musical performances or acts which constituted unauthorized uses of the copyrights.

132. Alternatively, even if all Defendants were not directly liable for copyright infringement, at least one of them is directly liable and one or more of the other Defendants are vicariously liable for the copyright infringements that occurred during events where unauthorized uses of Tho Thi Hoang's music occurred.

133. Defendant Hummingbird Nest (aka Hummingbird Nest Ranch) is an event venue that bills itself as follows: "Surrounded by sweeping vistas, Hummingbird Nest's extensive property boasts a grand Spanish Villa, shaded olive groves, sparkling fountains, sprawling lawns and private vineyards."

134. Defendant Hummingbird Nest offers catering services, bar services, florist services and event rentals. It offers villa services for 300 guests, seating ("sitting bull") for 300 guests, a grand prix section for 999 guests, a lake lawn section for 700 guests, a Q Vineyard for 250 guests, a barn for 800 guests and an upcoming paradise of love section. Defendant Hummingbird Nest could

accommodate a large number of guests, thus increasing the level of profits from hosting an event where original music was performed.

135. Defendant Hummingbird Nest is vicariously liable as a sponsor, host and/or promoter of the musical events because they had the right and ability to supervise or control the infringing activity and derived a direct financial benefit from it. Because Defendant Hummingbird Nest controlled who had access to the property and what portions they had access to, Defendant Hummingbird Nest had the right and ability to supervise or control the infringing activity. Also, Because Defendant Hummingbird Nest charged for the use of its facilities, Defendant Hummingbird Nest derived financial benefit from the performances of Tho Thi Hoang's music on its premises.

136. Defendant Kieu Hoang Productions, LLC is vicariously liable as a sponsor, host and/or promoter of the events where Tho Thi Hoang's music was played because it had the right and ability to supervise or control the infringing activity and derived a direct financial benefit from it. Because Defendant Kieu Hoang Productions, LLC controlled to whom promotions and advertisements were displayed or conducted, as well as where and how promotions for the events were displayed or conducted, and who had access to the property and what portions they had access to, Defendant Kieu Hoang Productions, LLC had the right and ability to supervise or control the infringing activity. Also, because Defendant Kieu Hoang Productions, LLC charged for its promotional and/or advertising and/or hosting services, Defendant Kieu Hoang Productions, LLC derived financial benefit from the performances of Tho Thi Hoang's music on its premises.

Original Complaint
*King v. Hoang et al.*

137. Alternatively, even if all Defendants were not directly liable for copyright infringement, at least one of them is directly liable and one or more of the other Defendants are contributorily liable for the copyright infringements that occurred during events where unauthorized uses of Tho Thi Hoang's music occurred. Each of the Defendants intentionally induced or encouraged direct infringement by another Defendant.

138. Contributory liability for copyright infringement arises when a party, with knowledge of another's infringing activity, induces, causes, or materially contributes to that infringement. This doctrine is rooted in tort-law principles of enterprise liability and imputed intent. Courts have consistently held that contributory liability requires two key elements: (1) knowledge of the direct infringement, which can be actual, constructive, or based on willful blindness, and (2) a material contribution to or inducement of the infringing conduct.

139. The material contribution element can be established through personal conduct that encourages or assists the infringement or by providing goods or services that facilitate the infringement. Each of the Defendants sponsored, hosted and/or promoted the events where Tho Thi Hoang's music was played. Additionally, Defendants such as Hummingbird Nest provided services such as food, beverage and/or floral services which also factored into their liability for contributory infringement.

140. Numerous works were created by Tho Thi Hoang. According to a message dated November 16, 2021, Defendant Kieu Hoang claimed that he had spent money to file copyrights and that they had 350 total copyrights on Tho Thi Hoang's musical works.

141. Plaintiffs had indicated an intent to assign these copyrights to defendant Kieu Hoang under the Copyright Assignment Agreement dated June 21, 2018.

142. Because Defendant Kieu Hoang failed to pay the full amount owed under the Copyright Assignment Agreement, the assignment was not fully performed and Plaintiffs retain ownership rights in the copyrights.

143. A list of more than 130 copyright registrations owned by Plaintiffs are attached as Exhibit B, which further includes the registration numbers, dates of registration. The list also shows the types of registrations.

144. Defendants copied the works.

145. Defendants Kieu Hoang, and his companies, including Kieu Hoang Productions and Hummingbird Nest used the copyrights to Tho Thi Hoang's music.

146. Defendants hosted at least ten events featuring the musical works of Tho Thi Hoang.

147. On or about June 24, 2025, defendants promoted via Facebook events featuring Tho Thi Hoang's songs. On or about July 6, 2025, defendants held an event featuring Tho Thi Hoang's songs.

148. Defendants' copying was substantial and material.

149. Defendants used the copyrights to promote events and generate revenue.

Original Complaint
*King v. Hoang et al.*

150. Defendants' use of the copyrights was substantial and material to their business operations.

151. Defendants' uses were not authorized.

152. Defendants purported to turn over the copyrights to Plaintiffs and their siblings. However, thereafter, Defendants continued to use the copyrights.

153. Defendant Kieu Hoang's use of the copyrights was not authorized. He failed to pay the full amount owed under the Copyright Assignment Agreement.

154. Defendants Kieu Hoang Productions, LLC and Hummingbird Nest did not have authorization to use the copyrights.

155. Defendants acted with knowledge or reckless disregard of the copyright owners' rights. Defendants were aware that their actions constituted infringement, since Kieu Hoang purported to return the copyrights but then continued to use the music without paying for it. Plaintiff Damien King repeatedly warned of payments due under the Agreement, but Kieu Hoang never heeded those warnings and simply lied and bought time. In the meantime, he and his businesses profited from unauthorized uses of the copyrighted work. The aforementioned conduct by Defendants constitutes willful copyright infringement under the Copyright Act.

156. As a result of the above-described conduct by Defendants, Plaintiffs have been damaged in an amount to be proven at trial.

157. Under the Copyright Act of 1976, 17 U.S.C. § 505, courts have discretion to award reasonable attorney's fees to the prevailing party in any copyright action. Accordingly, Plaintiffs request reasonable attorney's fees.

158. By reason of the copyright infringement described above, Plaintiffs are entitled to recover Defendants' profits to the extent the same are not included as part of Plaintiffs' damages.

159. In the alternative, at the election of Plaintiffs, Plaintiffs are entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees. For infringement of 350 copyrights (as alleged to exist by Defendant Kieu Hoang) in one event, the total of $52,500,000 would be due for statutory damages. Defendants infringed numerous copyrights with each show they held, so damages are likely to be higher. Upon information and belief, Defendants held at least ten shows, nine of which preceded 2025. Therefore, Plaintiffs request damages in the amount of at least $52,500,000 for each show, and as much as $525,000,000 for ten shows.

160. WHEREFORE, Plaintiffs pray for relief as set forth herein.

## Count IV - Fraud and Misrepresentation

### (Against all defendants)

161. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 160 as if fully set forth herein.

162. Defendant Kieu Hoang made false representations on behalf of himself and as representative for Kieu Hoang Productions, LLC.

163. Defendant Kieu Hoang made false statements to plaintiffs about returning the copyrights to Tho Thi Hoang's music. In fact, on or about November 16, 2021, he said he would return the copyrights to the four siblings. Kieu Hoang

also misrepresented to the Copyright Office that he inherited these works from Tho Thi Hoang.

164. Later, in or around February 2022, Defendant Kieu Hoang promised to make monthly installment payments of $25,000 to plaintiffs. He never had the intention of doing so, as evidenced by the hot checks that he wrote that same month.

165. Defendant Kieu Hoang made a number of false statements on his own behalf and on behalf of his businesses.

166. Defendant knew the representations were false.

167. Defendant Kieu Hoang knew that his statements about returning the copyrights were false because he continued to use the copyrights.

168. Defendant Kieu Hoang knew that his promise to make monthly installment payments was false because he ceased making payments after February 2022.

169. Defendant intended to induce reliance on the representations.

170. Defendant Kieu Hoang made the false statements to plaintiffs with the intent that plaintiffs would rely on them.

171. Defendant Kieu Hoang intended that plaintiffs would forbear from taking legal action based on his false statements.

172. Defendant Kieu Hoang intended that plaintiffs would allow him to use the copyrights, which initially they intended to do based on Kieu Hoang's representations.

Original Complaint
*King v. Hoang et al.*

173. Plaintiffs relied on the representations.

174. Plaintiffs relied on defendant Kieu Hoang's statements about returning the copyrights.

175. Plaintiffs relied on defendant Kieu Hoang's promise to make monthly installment payments.

176. Plaintiffs took or refrained from taking action in reliance on the false statements, including delaying legal action or agreeing to payment plans.

177. Plaintiffs suffered damages as a result.

178. Plaintiffs suffered damages in the amount of $600,000 owed to plaintiff Ted Hoang and $925,000 owed to plaintiff Damien King, totaling $1,525,000.

179. Plaintiffs also suffered additional damages from defendants' continued unauthorized use of the copyrights.

180. Plaintiffs suffered lost opportunities, loss of a family legacy, additional costs incurred, and other consequential damages resulting from the fraud.

181. In doing the acts alleged herein, Defendants were guilty of oppression, fraud, and/or malice as set forth in Cal. Civ. Code 3294. More particularly, Defendants engaged in despicable conduct with deliberate intent to injure and damage Plaintiffs in an effort to induce them to refrain from taking action against Defendants in connection with the copyrights. Defendants thus subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their property and

31

Original Complaint
*King v. Hoang et al.*

other legal rights, so as to justify an award of exemplary damages in favor of Plaintiffs and against Defendants.

182. Defendants knew of the probable harmful consequences of such untimely and unsuccessful work, and yet they deliberately told falsehoods to the Plaintiffs forcing them to delay or forgo legal action and allowing for Defendants to run down the statutes of limitations since Defendants has legal counsel.

183. Defendants' conduct was so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people. Defendants knew of the probable harmful consequences of taking a family legacy and not paying the amount agreed or the fair market value of it.

184. Defendants deliberately failed to act in order to avoid probable harmful consequences.

185. Defendants committed the acts complained of herein with malice when they engaged in despicable conduct that was carried on by Defendants with a willful and conscious disregard of the rights or safety of others.

186. Defendants' conduct was so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.

187. Upon information and belief, Defendant Kieu Hoang was a managing agent of each of the other Defendants. Upon information and belief, Defendant Kieu Hoang exercised substantial discretionary authority over the other Defendants' businesses. More particularly, Defendant Kieu Hoang was authorized to establish terms and conditions for the company's work, to negotiate

32

terms and conditions of the company's work, and to sign contracts on behalf of the companies.

188. WHEREFORE, Plaintiffs pray for relief as set forth herein.

## Count V - Breach of the Implied Covenant

## of Good Faith and Fair Dealing

### (Against all defendants)

189. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 188 as if fully set forth herein.

190. A valid contract existed between plaintiffs and defendant Kieu Hoang for $1,000,000 each for a copyright assignment. A valid contract also existed between plaintiffs, defendant Kieu Hoang and Kieu Hoang Productions LLC for payments of $25,000 monthly beginning in 2022, based on at least the communications between them on February 4, 2022. Instead of paying the amount due for the works, Kieu Hoang misrepresented to the Copyright Office that he inherited these works from Tho Thi Hoang.

191. On June 21, 2018, plaintiffs and defendant Kieu Hoang executed a Copyright Assignment Agreement regarding copyrights to Tho Thi Hoang's music.

192. Plaintiffs performed their obligations under the contract.

193. Plaintiffs assigned the copyrights to Tho Thi Hoang's music to defendant Kieu Hoang as required by the Copyright Assignment Agreement.

194. Defendant breached the implied covenant of good faith and fair dealing.

195. Defendant Kieu Hoang attempted to avoid his contractual obligations by claiming that the agreement was unenforceable due to alleged warranty breaches.

196. Defendant Kieu Hoang attempted to avoid his contractual obligations due to lower-than-expected financial outcomes, which Plaintiffs submit is not a valid reason to excuse Kieu Hoang's performance, including by stopping payments, on the contract.

197. Defendant Kieu Hoang and Kieu Hoang Productions, LLC issued eleven checks for which insufficient funds were available, totaling $400,000 to plaintiff Damien King.

198. Additionally, Defendant Kieu Hoang and Kieu Hoang Productions, LLC tried to unilaterally call off payments on the Agreement, while simultaneously continuing to receive benefits from the Agreement via sponsored, hosted and/or promoted events. Plaintiffs never agreed to discontinue payments on the Agreement, and Defendants never obtained such an agreement.

199. Defendant Kieu Hoang and Kieu Hoang Productions, LLC ceased making payments after making only two payments of $25,000 in February 2022, despite promising $25,000 monthly installments.

200. Plaintiffs suffered damages as a result of defendant's breach. Moreover, if a valid contract did not exist, then Defendants did not have the right to use the musical works, and they are liable for copyright infringement.

201. Plaintiffs suffered damages in the amount of $600,000 owed to plaintiff Ted Hoang and $925,000 owed to plaintiff Damien King, totaling $1,525,000.

202. WHEREFORE, Plaintiffs pray for relief as set forth herein.

## Count VI - Conversion

### (Against all defendants)

203. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 202 as if fully set forth herein.

204. Plaintiffs owned or had a right to possession of the property.

205. The property included Tho Thi Hoang's musical works as well as funds for which checks had been written but the amounts for the checks were not recovered. Instead of paying for the copyrights, Kieu Hoang misrepresented to the Copyright Office that he inherited these works from Tho Thi Hoang.

206. Plaintiffs owned the copyrights to Tho Thi Hoang's musical works, consisting of about 350 copyrights.

207. Plaintiffs had a right to possession of the copyrights because defendant Kieu Hoang failed to pay the full amount owed under the Copyright Assignment Agreement.

208. Plaintiffs have owned the copyrights since their father's death. They are owners/claimants on the copyrights.

209. Defendants took possession of the property.

Original Complaint
*King v. Hoang et al.*

210. Defendants Kieu Hoang, Kieu Hoang Productions, Hummingbird Nest, Raas Nutritionals, KHKMY, and RAAS took possession of the copyrights by using them without authorization.

211. Defendants used the copyrights to promote events and generate revenue.

212. Defendants never repaid the funds owed on the insufficient funds checks.

213. In July 2025, defendants promoted events featuring Tho Thi Hoang's songs.

214. Defendants intended to exercise control over the property.

215. Defendants intended to exercise control over the copyrights by using them for commercial purposes.

216. Defendants used the copyrights to promote events and generate revenue for their businesses.

217. It is clear that Defendants intended to exercise dominion and control over the copyrights, because they created marketing materials, and other documents showing their intended use.

218. Defendants' exercise of control was unauthorized.

219. Defendants' exercise of control over the copyrights was unauthorized because defendant Kieu Hoang failed to pay the full amount owed under the Copyright Assignment Agreement.

Original Complaint
*King v. Hoang et al.*

220. The checks in payment for potential copyright rights written by Kieu Hoang Productions, LLC were dishonored by the banks.

221. Defendants Kieu Hoang Productions, Hummingbird Nest, Raas Nutritionals, KHKMY, and RAAS did not have authorization to use the copyrights.

222. Defendant Kieu Hoang even stated in correspondence that he had returned the copyrights.

223. Plaintiffs suffered damages as a result.

224. Plaintiffs suffered damages in the amount of at least $600,000 owed to plaintiff Ted Hoang and $925,000 owed to plaintiff Damien King, totaling $1,525,000.

225. Plaintiffs also suffered additional damages from defendants' unauthorized use of the copyrights.

226. Plaintiffs were also required to hire legal counsel and incur costs and expenses, and compensation is requested for these items.

227. WHEREFORE, Plaintiffs pray for relief as set forth herein.

**Count VII – Violation of Cal. Civ. Code 1719**

**(By Damien King against Kieu Hoang and Kieu Hoang Productions, LLC)**

228. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 227 as if fully set forth herein.

229. Defendants violated Cal. Civ. Code 1719 with regard to Plaintiff Damien King when they issued checks for which insufficient funds had been available.

230. The check numbers, dates and amounts for the checks for which $375,000 in insufficient funds were available are as follows:

a.  Check Number: 1026; Date: 6/30/2018; Amount: $12,500.

b.  Check Number: 1033; Date: 7/16/2018; Amount: $37,500.

c.  Check Number: 1055; Date: 8/13/2018; Amount: $50,000.

d.  Check Number: 1100; Date: 10/10/2018; Amount: $50,000.

e.  Check Number: 1108; Date: 11/15/2018; Amount: $50,000.

f.  Check Number: 1175; Date: 5/16/2019; Amount: $31,250.

g.  Check Number: 1319; Date: 6/5/2019; Amount: $31,250.

h.  Check Number: 1207; Date: 6/17/2019; Amount: $31,250.

i.  Check Number: 1218; Date: 7/8/2019; Amount: $25,000.

j.  Check Number: 1351; Date: 10/22/2019; Amount: $31,250.

k.  Check Number: 1393; Date: 2/4/2022; Amount: $25,000.

l.  Check Number: 1226; Date:2/21/2022; Amount: $25,000.

231. Cal. Civ. Code 1719 permits Plaintiff Damien King to recover triple the amount of a dishonored (bounced) checks, plus service charges (e.g., $25–$35) and mailing costs, if the maker fails to pay the full amount within 30 days of a written demand.

232. Cal. Civ. Code 1719 provides that any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to

Original Complaint
*King v. Hoang et al.*

exceed thirty-five dollars ($35) for each subsequent check to that payee passed on insufficient funds.

233. Cal. Civ. Code 1719 also provides that any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check, subject to certain limitations.

234. On or about February 4, 2022, Plaintiff Damien King notified Defendant Kieu Hoang of the protections of Cal. Civ. Code 1719 including a service charge. In this regard, Plaintiff Damien King sent Defendant Kieu Hoang a communication referencing the insufficient funds checks and requesting payment.

235. On or about January 30, 2026, Plaintiff Damien King sent another notice letter via counsel by certified mail, return receipt requested. This notice letter advised of the protections of Cal. Civ. Code 1719, including identification of checks by date, check number and amount. The letter also requested compensation for the insufficient funds checks. The letter also advised defendants of the availability of treble damages up to a maximum per check and an associated service charge per check.

## COUNT VIII – Unfair Competition
## Violation of Cal Bus & Prof Code 17200
## (Against all defendants)

236. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 235 as if fully set forth herein.

237. Cal Bus & Prof Code § 17200 broadly defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice and unfair,

39

deceptive, untrue or misleading advertising". Cal Bus & Prof Code § 17200. This broad definition allows for claims based on fraudulent conduct, including misrepresentations or deceit.

238. In *In re Tobacco II Cases, 46 Cal. 4th 298,* the California Supreme Court emphasized that fraudulent business practices, including misrepresentations, fall under the UCL's scope. *In re Tobacco II Cases, 46 Cal. 4th 298.*

239. Similarly, in *Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373*, the court noted that reliance on misrepresentations could establish causation for a UCL claim when fraud is the basis of the action. Furthermore, in *Farmers & Merchants Trust Co. v. Vanetik, 33 Cal. App. 5th 638,* the jury found violations of Cal Bus & Prof Code § 17200. based on intentional misrepresentation, fraudulent concealment, and false promises, demonstrating that fraudulent conduct related to payment obligations can support a UCL claim .

240. Thus, because defendants failed to pay and lied about the reasons for nonpayment, this conduct is actionable under California's UCL as a fraudulent business practice. Defendant Kieu Hoang even misrepresented that Damien King cashed $400,000 in checks which he knew wasn't true because Kieu Hoang told him to hold on to the checks. Additionally, for example, Kieu Hoang misrepresented that he had returned the copyrights, but continued to use them. Kieu Hoang also misrepresented to the Copyright Office that he inherited these works from Tho Thi Hoang, when he did not.

241. WHEREFORE, Plaintiffs pray for relief as set forth herein.

Original Complaint
*King v. Hoang et al.*

**COUNT IX – Declaratory Judgment**

**of Copyright Non-Ownership by Defendants**

**(Against all defendants)**

242. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 241 as if fully set forth herein.

243. There is an actual and present controversy between the parties. Plaintiffs contend that Defendants stated that Kieu Hoang would pay Plaintiffs each $1,000,000, participate in various actions and then Kieu Hoang would return the copyrights to Plaintiffs. Kieu Hoang also misrepresented to the Copyright Office that he inherited these works from Tho Thi Hoang.

244. Plaintiffs desire a judicial declaration that Kieu Hoang returned the copyrights. Kieu Hoang's name should be removed from the copyright records.

245. Plaintiffs desire a judicial declaration that Defendants currently own no rights to the copyrights.

246. Plaintiffs desire a judicial declaration that Defendants must abide by the terms of the Agreement and pay Plaintiffs at least $525,000,000 in statutory damages (or other damages as determined by the Court) for Defendants' willful unauthorized uses of the copyrights outside the agreed upon time frame after the various actions had been completed. There were 350 copyrights that were performed on at least eleven occasions.

247. Plaintiffs further desire a declaratory judgment on any issues the court deems necessary to resolve the dispute between the parties.

248. WHEREFORE, Plaintiffs pray for relief as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendants as follows:

A.       Actual damages, statutory damages, punitive or treble damages and such other relief as provided by the statutes cited herein;

B.       Compensatory damages against one or more defendants in the amount of $1,525,000, consisting of $600,000 owed to plaintiff Ted Hoang and $925,000 owed to plaintiff Damien King, for breach of the Copyright Assignment Agreement pursuant to Cal Civ Code § 3300;

C.       That Defendants, their agents, and employees be enjoined from further infringement of Tho Thi Hoang's musical works and, to the extent that their names are on the pertinent copyright records, that their names be removed from the ownership records of the pertinent works in the Copyright Office;

D.       That Defendants be required to pay damages for copyright infringement, including actual damages, or statutory damages ($150,000 per willful infringement), or disgorgement of profits;

E.       In the case of statutory damages against one or all defendants for copyright infringement pursuant to 17 USCS § 504, an amount up to $150,000 per work for at least 350 copyrightable musical works performed on at least ten occasions, for a total of at least $52,500,000 in damages for each occasion;

F.      That one or more Defendants be required to pay restitution for unjust enrichment;

G.      For violations of Cal. Civ. Code 1719, treble damages for triple the checks' amount, and also bank fees, mailing costs, and statutory damages (treble the check amount, but at least $100 and up to $1,500) against all defendants for checks for insufficient funds;

H.      Pre-judgment and post-judgment interest against all defendants on unpaid amounts at the rate of 10% per annum from the date the payments were due until the date of judgment and thereafter pursuant to Cal Civ Code § 1916;

I.      Attorney's fees and costs against all defendants incurred in prosecuting this action pursuant to at least Cal Civ Code § 1717 and 17 USCS § 505;

J.      Punitive damages against all defendants for fraud and misrepresentation pursuant to Cal Civ Code § 3294;

K.      A declaration that the Copyright Assignment Agreement is valid and enforceable, and that defendant Kieu Hoang's warranty breach defense is without merit;

L.      A declaration that Plaintiffs are partial owners of the copyrights, and Defendants own no interest in the copyrights; and

M.      Such other relief as the Court deems just and proper, in law, equity or otherwise.

Original Complaint
*King v. Hoang et al.*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  February 3, 2026

BURTON IP LAW GROUP

By:      /s/ Daphne L. Burton
         Daphne L. Burton
         Burton IP Law Group
         2029 Century Park East
         Suite 400N
         Los Angeles, CA  90067
         Tel:  (310) 867-2754
         Fax:  (888) 972-1879
         Attorneys for Plaintiffs Thu Hoang
         and Thanh Hoang

Original Complaint
*King v. Hoang et al.*